McCunn, J.
The petitioner furnishes satisfactory proof of good moral character, of one year’s residence within the United States previous to the present application, and that he is of the age of twenty-one years and upwards. He shows further, by competent and sufficient evidence, that he was regularly enlisted in the United States navy; that he served in the navy as an enlisted man; and that he was honorably discharged from the service of the United States. The question is, do these facts bring his case within the provisions of section 21 of the act of congress, approved July 17, 1862, and so entitle him to naturalization by virtue of that statute ?
Perhaps the case is not within the strict letter of the law, for its words are, “ who has enlisted &e. in the armies of the United States,” the navy eo nomine not being mentioned. In the absence of an express adjudication of the point, the doubt must be -resolved- by reason alone. In the construction of a statute, these two considerations are of controlling weight: 1st. The reason and policy of the *636 law. 2d. The general scope and import of all its provisions.
1. The policy on which the enactment in question proceeds is, that those who have enlisted in the military service of the country, and have endured its privations and perils, by that fact both attest their patriotism and establish a claim to be admitted to the privileges of citizenship.
Possibly, too, in conferring this distinction on the military service, the federal legislature' intended it in the nature of a bounty, to encourage enlistment. In this aspect of the law, as regards its reason and policy, there can be no discrimination between the army and navy; or, if there be any, the latter has the greater claim to public recognition and gratitude, in, proportion as its service involves greater sacrifice and danger. The presumption cannot be for a moment entertained, that congress deliberately designed to exclude .the seaman from the boon, conferred upon the soldier. If the apparent, exclusion of the navy from the. benefit of the law in question was the result of inadvertence, the court should repair the omission by a generous construction. But, secondly, I discover- no such omission. On the contrary, I am persuaded, from a comprehensive view of the statute, that congress understood they had employed terms sufficiently apt to designate the navy as the object of this particular bounty. The word is not army—the plural number is used; and it is enacted that those “ who have enlisted &c. in the armies of the United States ” shall, &c. Army is a word of very general signification, analogous and equivalent to military service, and perhaps of itself would embrace persons employed in the navy. When we speak of the military power of a country we intend as well its seamen as its soldiers, its naval as well as its land forces. In its etymology the word army denotes “ men in arms,” whether ashore or *637 •afloat; and historically we know that not until a comparatively recent period, in any country, was the navy distinguished as a separate and independent establishment.
Indeed, even now, only in some special case, and when a particular application is designed, do men speak of the army as distinguished from the navy. The term in law language is nomen generalissimum, and includes the navy; except its meaning be restricted in the particular instance.
That the army, technically and exclusively, was not intended by'this statute, is evident from the employment of the plural noun, armies..
And this construction is strengthened by the subsequent phrase, “ such person having been honorably discharged from the service of the United States.”
Altogether, I entertain no doubt but the provisions of this statute embrace the navy as well as the army, and I shall admit the petitioner to naturalization, as well as all others in like case.